## Barner v. PennDOT

*John B. Mancke,* for plaintiff.
*Timothy P. Wile, assistant counsel,* for PennDOT.

KLEINFELTER, *J.,* October 15, 1993—This matter came before the court as an appeal from a motor vehicle license suspension pursuant to section 1547 of the Motor Vehicle Code. 75 Pa.C.S. §1547 provides:

"(a) General Rule.—Any person who drives, operates or is in actual physical control of the movement of

a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

"(1) while under the influence of alcohol or a controlled substance or both; ...

"(b) Suspension for Refusal.—

"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months."

The troublesome words in the above legislation are "and refuses to do so." Recent decisions of our Commonwealth Court have adopted the position that a failure to provide an adequate breath sample constitutes a per se refusal, regardless of any good faith effort on the part of the motorist to comply with the request. Most recently in *PennDOT v. Kilrain,* 140 Pa. Commw. 484, 593 A.2d 932 (1991), *alloc. denied,* 529 Pa. 625, 600 A.2d 541 (1991), the court reviewed the language of section 1547 and observed:

"Reading this language in isolation, it could be interpreted so that all that is required to submit to the test is to manifest an intention to take the test and to make an attempt to take the test. However, this court has long required more than mere verbal assent to take the test and has required that the licensee actually take and complete the test." *Id.* at 488, 593 A.2d at 934.

Citing *PennDOT v. Berta,* 120 Pa. Commw. 558, 549 A.2d 262 (1988) and *PennDOT, Bureau of Traffic Safety v. Jones,* 38 Pa. Commw. 400, 395 A.2d 592 (1978), the court went on to conclude:

"The bedrock principal in *Berta* and *Jones* is that failure to complete a breathalyzer test constitutes a refusal. A trial court's finding that a licensee made a good faith attempt to complete the breathalyzer test is irrelevant to the question of whether the licensee refused the test. Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal." *Id.* at 489-490, 593 A.2d at 935.

If the trial court is to apply the above language in a mechanical fashion there hardly seems any purpose in having a hearing on the matter. As Judge Pellegrini noted in a well reasoned dissent, equating "refusal to do so" with "failure to complete the test" produces an oxymoronic result. *Id.* at 493, 593 A.2d at 937. Of course, no matter how much a trial judge agrees with the approach applied by a dissenting judge in an appellate court, we are obliged to apply the law enunciated by the majority. That brings us to the present case.

On April 8, 1993, Donna Barner was arrested for driving under the influence and taken to Dauphin County Central Booking. She was interviewed by a John Benner and asked to supply a sample of her breath for analysis by an Intoxilyzer 5000. A videotape recording was made of the entire procedure. Mr. Benner explained that the machine emits a tone when sufficient air is entering the device. Benner explained that the motorist under arrest must maintain a sufficient volume of breath for approximately ten seconds in order to provide a sufficient reading. Benner testified that four samples were

required.[1] In a studied review of the videotape, counsel and the court attempted to record the results of five attempted tests. The number of seconds during which the tone was activated in each test is as follows: Test 1, three seconds; test 2, nine seconds; test 3, four seconds; test 4, three seconds; test 5, six seconds. During one of these tests the machine provided a momentary reading of .215. Benner also explained that the machine emits a beep when a sufficient sample has been received.

In this case, Mr. Benner conceded that he did not instruct the defendant to blow into the machine until she heard a beep. He did not explain to her that the machine required approximately ten seconds of uninterrupted breath or that she would have to take a deep breath before beginning to blow. At one point, the defendant stopped blowing after the operator said "okay" even before the beep had sounded. We find that the lack of clarity in Mr. Benner's instructions was a primary cause of the failure to obtain a valid test. If the licensee makes a conscious effort to comply but is unsuccessful because of operator failure, there can be no refusal. See e.g., *PennDOT v. Marion,* 109 Pa. Commw. 299, 530 A.2d 1053 (1987).

Additionally, we are convinced that petitioner was physically unable to supply the volume of air necessary to complete the test. One must be mindful that the entire purpose of the test is to confirm and quantify a police officer's suspicion that a motorist is too drunk to drive. It would seem to us that someone who has consumed alcohol to the extent that their sensibilities and dexterity have been so diminished as to render

---

1. 67 Pa. Code §77.24(b) requires two consecutive breath samples for a valid breath test. Two consecutive adequate breath samples are required to complete a single test.

them incapable of safe driving must also have a diminished capacity to understand instructions. Moreover, the oral dexterity required to blow an adequate breath sample into the intoxilyzer is not unlike the many other field sobriety tests administered to establish probable cause of drunk driving. The record establishes, and the videotape confirms, that the 95 pound subject of this arrest was more than double $(.215)^2$ the presumptive level of intoxication. She was emotionally distraught over the arrest and frequently distracted during most of the testing process. Our courts have long recognized that a physical inability to complete the test is a valid defense to a suspension under section 1547(b). While a motorist's bare assertion of physical incapacity is insufficient, medical evidence is not a per se requirement. *PennDOT v. Rogers,* 110 Pa. Commw. 453, 532 A.2d 935 (1987); *PennDOT v. Day,* 93 Pa. Commw. 49, 500 A.2d 214 (1985). In this case, we believe that the Commonwealth's own evidence, the videotape, provides ample evidence to allow petitioner to meet her burden of proof in this regard.

As we stated on the record at the conclusion of the hearing, we are not able to conclude in good conscience after a careful review of the videotape in evidence that this motorist "refused" to provide the breath sample required by section 1547. That drunk drivers are a menace on our highways is hardly contested, that scientific tests to determine blood/alcohol levels are desirable is not an issue, that appropriate sanctions should follow noncompliance with the implied consent law is not in dispute, that those who would manipulate or feign com-

---

2. Although we have no training in toxicology, it would seem to us that the higher one's BAC level, the more difficult it would be to provide a breath sample for the time required.

528

pliance with the procedure should not escape these sanctions is also not an issue. But to impose a suspension on the regimented basis demanded here by PennDOT could not have been the intent of the general assembly when it enacted this legislation.

Before applying any per se rule to the alleged "refusal" in this case, we invite the appellate court to review the videotape which is in evidence. It may also be of interest to obtain a mouthpiece for an Intoxilyzer 5000 and attempt to blow through it for ten seconds—not with a BAC of .215, but stone sober.